ROBERT BOSQUET *vs.* WORCESTER CONSOLIDATED STREET
RAILWAY COMPANY.

Worcester.   September 29, 1913. — October 20, 1913.

Present: RUGG, C. J., MORTON, HAMMOND, SHELDON, & DE COURCY, JJ.

*Negligence,* In use of highway, Street railway.   *Bicycle.   Evidence,* Remoteness.
*Practice, Civil,* Exceptions.

It is not negligence as matter of law for a boy ten years of age to ride a bicycle,
which has no brake, down a street with a sharp grade which is crossed at its foot
by a street railway track.

If a boy ten years of age is riding a bicycle, which has no brake, down a street with
a sharp grade which is crossed at its foot by a street railway track, and, when he
is about one hundred feet from the track, sees a street railway car coming
from an intersecting street, and shouts to the motorman to stop the car,
but the car instead of stopping goes faster than before, so that the boy has no
chance to cross in front of it and turns to the right hoping to get around the rear
end of the car, but fails to clear it and comes into collision with the car and is
injured, in an action against the street railway company for his injuries there is
evidence on which it could be found that, being placed in sudden peril, he took
the course most likely to extricate him from it, and the question of his due care
is for the jury.

In an action against a street railway company for injuries to a boy ten years of age,
who was riding a bicycle down a street with a sharp grade crossed at its foot by
a track of the defendant, when he came into collision with a car of the defendant
which came from an intersecting street, if there is evidence on which it
could be found that the motorman operating the car might have prevented
the accident if he had run the car more slowly or had stopped it or if he
had put the plaintiff on his guard by blowing a whistle or ringing a bell when
approaching the corner, the question of the defendant's negligence is for the
jury.

In an action against a street railway company for injuries to a boy ten years of age
who was riding a bicycle down a street with a sharp grade crossed at its foot by
a track of the defendant, where the defendant excepted to the exclusion of evi-
dence of what the plaintiff's mother "quite a while before" had said to him
about riding down the street, and where the fact that the plaintiff's mother had
told him not to ride down the street had appeared by other evidence, it was *held*
that the presiding judge well might have excluded the evidence on the ground
that it was too remote, and that, at all events, it did not appear that the defend-
ant had been harmed by its exclusion.

MORTON, J.   The plaintiff, a boy of ten years of age (twelve
at the time of the trial), was riding on his bicycle down Otis Street

in Fitchburg when he came into collision with a car belonging to
the defendant company and received the injuries complained of.
Otis Street has a sharp grade.   The plaintiff's bicycle had no
brake, but he testified that he was "perfectly familiar" with it,
and knew how to manage and ride it.   He also testified that he
was "back pedalling" and "holding back as much as . . . [he]
could," and was in the road a little to the left of the centre of the
street.   Milk Street comes into Otis Street at right angles at the foot
of Otis Street, and has also a sharp grade.   The defendant's track
comes up Milk Street on the left hand side, and, as it reaches the
corner, curves into and across Otis Street to the right hand side
of Otis Street and continues on up Otis Street on that side.   The
plaintiff testified that he first saw the car at a point which the evi-
dence showed was a short distance below the corner on Milk Street,
when he was, as it appeared, approximately a hundred feet from
the corner, and that he shouted to the motorman to stop; that
the car did not stop but kept on and went faster than it did before;
that he "was thinking of going in front of it right straight across,"
"and the car started to go faster and I didn't have a chance to get
in front of it, so I went to the right of the street as I thought I
could get around the end of the car."   He also testified that there
would have been an opportunity to get in front of the car and go
by safely "if the motorman had been going as slow as when I
first saw him, but when he started to go faster I didn't have any
chance;" and that if he had stopped his bicycle he "would have
been thrown right over the handle bar and [in] front of the car."
It was in attempting to go to the rear of the car as testified above
that the plaintiff came into collision with it.   No whistle was blown
or gong sounded as the car came up Milk Street.   None was needed,
of course, so far as the plaintiff was concerned, after he saw the
car.   The motorman was a witness and his evidence tended in some
respects to contradict that of the plaintiff.   But manifestly, it
seems to us, the testimony of the plaintiff, if believed, would war-
rant a finding that he was in the exercise of due care.   He was in
the road where he had the right to be, and finding himself in a
position of sudden peril took, as could be found, the course most
likely to extricate himself from it.   It could not be ruled as matter
of law that he was wanting in due care in riding a bicycle without
a brake, down the street.   The question of his due care was plainly,

we think, for the jury. See *Robinson* v. *Springfield Street Railway*, 211 Mass. 483; *Robbins* v. *Dartmouth & Westport Street Railway*, 203 Mass. 546; *Green* v. *Haverhill & Amesbury Street Railway*, 193 Mass. 428.

We also think that there was evidence of negligence on the part of the motorman. The corner was or could be found to be a dangerous place. And it was for the jury to say whether the motorman exercised that degree of care which he ought to have exercised in approaching it and in attempting to avoid a collision. He testified that as he got near the corner he "could look across there," and that "there was nothing to obstruct . . . [his] . . . view for about sixty or seventy yards, and there wasn't anything in sight so . . . [he] didn't ring the bell or blow the whistle, or nothing, but kept on going around the curve." The jury may have thought, and if they did we cannot say that they were wrong, that if he had exercised proper care he would have seen the plaintiff and been able to avoid the accident. They also may have thought that the increase of speed, which was in effect admitted by the motorman, was not due, as he said, to the exigency which arose but to a careless running of the car. The jury were not bound to accept his explanation of it, and they may have thought that if he had run the car more slowly or had stopped it, or if the plaintiff had been put on his guard by the blowing of the whistle or the ringing of the bell, the accident might have been prevented.

What was said by the plaintiff's mother to him about riding down the street was "quite a while before," as the witness testified, and may well have been excluded because deemed by the presiding judge * too remote. Moreover, the fact that his mother had told him not to ride down the street was in evidence and would seem to have been all that the defendant was entitled to.

It follows from what we have said that the rulings requested were rightly refused.

*Exceptions overruled.*

The case was submitted on briefs.

*C. C. Milton, J. M. Thayer & F. H. Dewey,* for the defendant.
*D. I. Walsh, T. L. Walsh & C. B. O'Toole,* for the plaintiff.

---

* *Sanderson,* J. He refused to order a verdict for the defendant, and the jury found for the plaintiff. The defendant alleged exceptions.