ARTHUR C. PHILLIPS, administrator, *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Middlesex.   October 19, 1915. — November 23, 1915.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Negligence,* Street Railway, Causing death. *Evidence,* Presumptions and burden of proof.

In an action against a street railway corporation for negligently causing the death of the plaintiff's intestate, a boy twelve years of age, who, when riding a bi-

cycle that was much too large for him and was out of order, came into collision with a car of the defendant at a crossing of an intersecting street, it appeared at the trial that an order passed by the mayor and aldermen of the city where the accident occurred provided that no street railway car should be run at a rate of speed exceeding twelve miles an hour when crossing another street and in no instance should be run at a rate of speed exceeding twenty miles an hour, that when the defendant's car was approaching the intersecting street it was running at the rate of about fifteen miles an hour, that just before the car came to the line of the cross street a passenger on the car called the attention of the motorman to the boy approaching on a bicycle, that the motorman instantly "started to stop his car," that "he reversed the power, shut off his power, and put on his brakes," before the car reached the intersecting street, and that the next thing that happened was the collision. There was no direct evidence as to the rate of speed when the car was crossing the intersecting street. *Held*, that, the burden being on the plaintiff to prove that the rate of speed of the car while crossing the intersecting street was in excess of twelve miles an hour, there was no evidence warranting a finding of unlawful speed and no evidence for the jury of negligence on the part of the defendant.

PIERCE, J. This is an action of tort brought by the administrator of the estate of Edwin S. Phillips, to recover for his death. The evidence warranted the jury in finding the following facts:

The plaintiff's intestate, a boy about twelve years of age, while riding a bicycle in the city of Malden, came into collision with an electric car of the defendant at the junction of Main and Judson streets, and received injuries from which he subsequently died without conscious suffering. The accident happened on May 12, 1913, at about half past six in the afternoon. The car which struck the intestate was running from Boston to Malden Square, on the outward bound track from Boston. The bicycle belonged to one Stevens, an employee of the plaintiff, and the intestate, with the permission of its owner, had been riding it for about a week. It was much too large for the boy, and in order to operate it he had to sit upon the crossbar and "follow the pedals around;" and to stop it he had to "slow it up and then kind of let it tip to one side and catch himself on his foot." Stevens testified in substance that the bicycle "had been fixed over and patched up several times, so that it was kind of a mixed up affair; that it had a coasterbrake, you could not call it a brake, it was kind of a knack to work it — kind of a trick to work it; that he meant by that expression that you had to bear down on one pedal and put your foot under the other pedal and pull up and put all your strength right into it;

that, if you tried to brake in the ordinary way, the bicycle would slow up a little but you would keep on going." The witness further testified "that he had not noticed him riding until the last two days; he had noticed him going by;" that he "watched him and saw that he could handle the bicycle fairly well; that by this he meant that when the boy got on a side street he could turn the bicycle around without falling off."

One Shea, a witness for the plaintiff, testified in substance that he worked in a grocery on Main Street, Everett; that on the day of the accident he was working for the plaintiff, driving a grocery wagon; that late in the afternoon of that day he had occasion to deliver some articles at a house on Judson Street. The plaintiff's intestate had been around the store nearly all the afternoon since four o'clock and was at the store when the witness left to deliver the goods. He next saw the boy at the house where he had delivered the articles. He had been into the house and was returning to the team when he saw the boy standing beside the wagon. The boy had the bicycle with him but was not then on it. The witness mounted his wagon and turned the horse around so as to drive down Judson Street toward Main Street, and went back toward the store. The boy mounted his bicycle and followed. When the witness had driven to a point about ten feet from the cross-walk and distant about twenty-three feet from the street railway track "he saw the car coming down at a rapid rate of speed and he pulled his horse up short and hollered to the boy to look out for the car; the boy was then right opposite the left hand hind wheel of the wagon;" and when the witness told him to look out for the car he "stood up on his pedals and back-pedalled and tried to stop;" that the boy was then going at the rate of "not much more than probably five miles an hour or a little more," and "that he, the witness, was driving at about the same rate of speed; when the boy commenced to back-pedal he first turned a little to the left and then he turned to the right, and the car overtook him; then the accident happened." On cross-examination he testified that "when the boy back-pedalled, the bicycle slowed down some, but not an awful lot, it was enough to notice it." The intestate then turned the course of his bicycle to his left in the direction of the car coming from Cross Street; as he passed upon the cross-walk he "suddenly turned to the right" and the

bicycle came in contact with the car; he was thrown from his bicycle and his head hit the side of the car.

The grade of Judson Street as it approaches Main Street is one and fifty-six one hundredths per cent downward toward Main Street. The grade of Main Street between Judson Street and Ashland Street is about one quarter of one per cent, or, in other words, "practically level." The distance from Judson Street to Ashland Street is two hundred and seven feet. Between Ashland Street and Cross Street, — a distance of one hundred and fifty-three feet, — the grade is greater, but its degree is not shown in the record.

The car with which the bicycle came in contact was a "small, closed, old fashioned car," about twenty-five or thirty feet in length, — the width from curb to curb of Judson Street. "The car stopped at Cross Street before it got to the cross-over where the line runs from Main Street into Cross Street," and the next stop was at Judson Street, the place of the accident, distant from Cross Street three hundred and sixty feet. The car ran at a rate of about fifteen miles an hour, and when seen by the employee of the plaintiff who warned the intestate, between Ashland and Judson streets, was running approximately at that rate of speed. Just before the car came to the street line of Judson Street a passenger who was standing in the vestibule beside the motorman, "looked up Judson Street and saw this boy coming down" toward Main Street, and said to the motorman: "Here, here. Look at the boy coming down on the bicycle." The motorman instantly "started to stop his car; . . . he reversed the power, shut off his power, and put on his brakes." The next thing that happened was the collision.

The plaintiff properly concedes that the motorman was not negligent after his attention was called to the boy.

The first contention of the plaintiff is that the car was approaching Judson Street at a rate of speed prohibited by law. In proof of this contention he put in evidence an order passed by the board of mayor and aldermen in the city of Malden on July 6, 1909, and as revised by the board of railroad commissioners September 29, 1909, which order as revised reads: "No street railway car shall be run at a rate of speed exceeding twelve miles per hour when crossing another street or passing an intersecting street or

private way, and in no instance shall be run at a rate of speed exceeding twenty miles per hour."

It appears by uncontradicted testimony that while the car was running between Ashland and Judson streets its rate was about fifteen miles an hour; it also is not disputed that the motorman shut off the power, reversed his motor and put on his brakes before the car reached Judson Street. No witness testified as to the rate of speed upon crossing Judson Street, but any reasonable inference is that concurrently with the throwing off of the power, with the reversal of the motor and the application of the brakes the speed of the car lessened. To maintain the proposition that the speed of the car was unlawful the burden was upon the plaintiff to establish by a fair preponderance of the testimony that the rate while crossing Judson Street was in excess of twelve miles an hour.

We are of opinion that the testimony does not warrant such a finding, nor, upon the whole evidence, did it warrant a submission to the jury of the defendant's negligence. In each one of the cases cited by the plaintiff (*Bosquet* v. *Worcester Consolidated Street Railway*, 215 Mass. 538; *Robinson* v. *Springfield Street Railway*, 211 Mass. 483; and *Robbins* v. *Dartmouth & Westport Street Railway*, 203 Mass. 546) there was ample evidence to support the plaintiff's allegation of due care and of the defendant's negligence. We find it unnecessary to determine whether the plaintiff was entitled to go to the jury on the question of his intestate's due diligence.

It follows that the direction * of a verdict for the defendant was right.

*Exceptions overruled.*

*A. P. Hardy,* for the plaintiff.
*P. F. Drew,* (*W. U. Friend* with him,) for the defendant.

---

* By *Callahan,* J.